IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| R.H. MURPHY CO., INC. )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ILLINOIS TOOL WORKS, INC. )<br>)<br>Defendants and Counterclaimant, )<br>)<br>v. )<br>)<br>R.H. MURPHY CO., INC. )<br>)<br>Counterclaim Defendant. )<br>) | Civil Action No. 98-10774RGS |

## FIRST AMENDED AND SUPPLEMENTAL COMPLAINT

### PARTIES

1. Plaintiff, R.H. Murphy Co., Inc., is a corporation duly organized and existing under the laws of the State of New Hampshire, having a place of business at 3 Howe Drive, Amherst, New Hampshire.

2. Defendant, Illinois Tool Works, Inc., on information and belief, is a corporation organized and existing under the laws of the State of Illinois, having a place of business at 3600 West Lake Avenue, Glenview, Illinois.

### NATURE OF THE ACTION

3. This is an action by Plaintiff against Defendant for infringement by Defendant of United States Letters Patent No. 5,400, 904 (the "'904 patent"), duly and legally issued by the United States Patent and Trademark Office on March 28, 1995 to Plaintiff entitled "TRAY FOR BALL TERMINAL INTEGRATED CIRCUITS". A copy of the '904 patent is attached as Exhibit A. This is also an action by Plaintiff against Defendant for



1

interference by Defendant with contract and advantageous business relationships, unfair competition, and defamation by Defendant against Plaintiff.

## JURISDICTION AND VENUE

4. This Court has original and exclusive jurisdiction pursuant to Title 28, United States Code, Section 1338(a), because Count I of this action arises under the Patent Laws of the United States (Title 35, United States Code, Section 1 et seq.). This Court has jurisdiction over the remaining Counts hereof pursuant to Title 28, United States Code, Section 1338(b), because the remaining Counts set forth substantial and related claims to the claim of Count I, and pursuant to Title 28, United States Code, Section 1367(a), because the remaining Counts set forth claims which are so related to the claim of Count I that they form part of the same case or controversy.

5. Venue in this judicial district is proper pursuant to Title 28, United States Code, Sections 1391(b) and (c) and 1400(b), because Defendant is doing business in this judicial district.

## COUNT I

## INFRINGEMENT OF PATENT

6. Plaintiff has been in business since 1982 for the purpose of designing, manufacturing and selling trays and other products useful in the transportation of integrated circuits.

7. Plaintiff is a leader in this field and owns various United States and foreign patents and has other applications for United States and foreign patents pending which relate to various aspects of its trays for integrated circuits.

8. Plaintiff owns by means of assignment all right, title and interest in and to the '904 patent, and has full authority to sue for infringement of that patent, and/or to license and collect royalties on products covered by that patent.

9. Plaintiff has manufactured and sold, and continues to manufacture and sell, a line of trays that incorporate the technology covered by the '904 patent, and that are sold as ball grid array (BGA) trays.

10. Plaintiff's BGA trays have embossed therein the legend "Patent 5,400,904", thereby complying with the notice of infringement requirements of Title 35, United States Code, Section 287.

11. On information and belief, Defendant has manufactured and sold, and continues to manufacture and sell, throughout the world, in direct competition with Plaintiff, trays for ball grid array integrated circuits including, but not limited to, trays bearing the legends:

| MODEL OR TOOL NO. | DESCRIPTION |
|---|---|
| 629 | 35 X 35 BGA |
| 641 | 31 X 31 TBGA |
| 642 | 37.5 X 37.5 TBGA |
| 651 | 27 x 27 PBGA |
| 651 | 27 x 27 BGA |
| 653 | 23 X 23 PBGA |
| 654 | 33 X 33 TBGA |
| 655 | 25 X 25 TBGA |
| 657 | 35 X 35 TBGA |
| 683 | 27 X 27 TBGA |
| 686 | 21 X 21 TBGA |
| 699 | 42.5 X 42.5 TBGA |

| MODEL OR TOOL NO. | DESCRIPTION |
| --- | --- |
| 700 | 45 X 45 TBGA |
| 719 | 40 X 40 TBGA |
| 720 | 23 X 23 TBGA |
| 721 | 37.5 X 37.5 SBGA |
| 727 | 25 X 25 CBGA |
| 729 | 31 X 31 TBGA |
| 730 | 35 X 35 SBGA |
| 735 | 31 X 31 SBGA |
| 736 | 27 X 27 X 1.5 PBGA |
| 738 | 35 X 35 PBGA |
| 744 | 35 X 35 PBGA |
| 745 | 27 X 27 PBGA |
| 748 | 31 X 31 CBGA-CCGA |
| 751 | 40 X 40 PBGA |
| 757 | 23 X 23 BGA |
| 763 | 9 X 9 FBGA |
| 765 | 9 X 7.25 CSP |
| 766 | 8.64 X 7.02 CSP |
| 775 | 8 X 8 PBGA |

12. Defendant's manufacture and sale of its BGA trays, including the aforementioned BGA trays, infringe one or more of the claims of the '904 patent.

13. On information and belief, the infringement by Defendant of the '904 patent has been deliberate and willful.

## COUNT II

## INTERFERENCE WITH CONTRACT

14. Plaintiff owns counterpart patents and/or patent applications corresponding to '904 patent in several foreign countries, including Japan and elsewhere.

15. On February 10, 1999, Plaintiff entered into a licensing agreement under the '904 patent and Plaintiff's foreign patents corresponding to the '904 patent with Dainippon Ink Chemicals, Inc., Tokyo, Japan ("DIC").

16. On November 9, 1999, Plaintiff entered into an agency agreement with DIC giving DIC the right to solicit licensing agreements under Plaintiff's foreign patents corresponding to the '904 patent in other countries.

17. The DIC license and agency agreements were negotiated by Plaintiff principally from its place of business in Amherst, New Hampshire, and expressly provide that they are to be interpreted and their performance governed by the laws of the State of New Hampshire. The DIC license and agency agreements also provide for the payment of royalties to Plaintiff in United States currency at Plaintiff's place of business in New Hampshire.

18. Pursuant to the aforementioned licensing agreement, DIC has entered into licensing agreements under Plaintiff's Japanese patent and other patents corresponding to the '904 patent with at least the following entities: TOYO Jyushi Ltd.; Daiwa Corporation; Denki Kagaku Kogyo Kabushiki Kaisha (Denka); Inoac Corp.; Minellon Co., Ltd.; Nissen Chemicals; Tokyo Printing Ink Mfg. Co., Ltd.; and Unitechno, Inc.

19. Since execution of the aforementioned agency agreement, DIC has actively and continuously pursued manufacturers throughout Asia excluding Japan that

manufacture BGA trays incorporating the technology covered by the '904 patent, for the purpose of executing license agreements with them. This licensing effort by DIC on Plaintiff's behalf still continues, and has already generated at least one additional license.

20. Since at least early 1999, Plaintiff has also entered into a licensing agreement with a company in Malaysia under the '904 patent and a corresponding patent of Plaintiff issued in Malaysia.

21. Plaintiff had conducted the aforementioned licensing efforts principally from its place of business in Amherst, New Hampshire.

22. Defendant has had actual knowledge of Plaintiff's license agreement with DIC and its license agreement with the Malaysian company since at least October 6, 1999. On that date, Defendant's counsel in this litigation received his service copy of Plaintiff's Supplemental Response to Defendant's Document Request No. 36 in this litigation, which provided Defendant with that information.

23. On information and belief, Defendant has since at least October 6, 1999 also been aware of Plaintiff's and DIC's active and continuous efforts to license the '904 patent and Plaintiff's corresponding foreign patents in the United States, Japan and other countries.

24. With full knowledge of Plaintiff's license agreement with DIC and the active and continuous efforts of Plaintiff and DIC to pursue additional license agreements, Defendant published a letter from the United States to customers and potential customers of actual and potential licensees, purporting to be a confidential opinion of its counsel in this litigation, dated January 6, 2000. The letter published by Defendant states, without qualification, condition or equivocation, that the '904 patent and its Japanese and other corresponding patents are invalid, and that the invention covered by the patents was "stolen" by Plaintiff from another. A copy of the letter published by Defendant, which was obtained by Plaintiff from DIC, is attached hereto as Exhibit B.

25. The letter of Exhibit B falsely characterizes what it is that is covered by the claims of the '904 patent and its Japanese and other foreign counterpart patents. Contrary

to the statement in the letter, Plaintiff's patent claims do not cover "a stackable and flipable tray for an integrated circuit component" per se, but rather trays with specific structural features that enable the trays to be stacked and flipped while fully supporting and protecting the BGA integrated circuit components held therein. The letter makes no mention, and contains no discussion, of those specific enabling features set forth in Plaintiff's patent claims.

26. The letter of Exhibit B is legally defective on its face in its statement that certain pre-filing date sales of trays by Defendant constitute an "absolute bar" to the validity of Plaintiff's patent claims. This is because the letter fails to make any effort to compare the language of Plaintiff's patent claims to the pre-filing date trays allegedly sold by Defendant, or to show, as required by law, that all of the enabling features recited in such claims are contained in Defendant's pre-filing date trays.

27. The letter of Exhibit B is also false and grossly misleading in its purported summary of the "sworn deposition" of Jeffrey Miks ("Miks") taken in this litigation. The letter states that "any invention disclosed in the Murphy patent did not originate with Murphy but with engineers at Motorola with whom Murphy was working". The letter goes on to state that Miks, the Motorola engineer in question, testified that he believed that the invention was "stolen [from him by Murphy]", and that Miks provided Defendant with documentary proof to substantiate his belief. The letter is false and misleading because it conceals the fact that, while Miks testified that the broad concept of stackable/flipable BGA trays per se was his, Miks also admitted that he had no idea how to design the details of the tray at the time he approached Plaintiff for the specific purpose of providing him with those details, and that the "enabling features [of the tray design] came from Murphy."

28. At the time that Defendant made a decision to publish the letter of Exhibit B, Defendant and its counsel in this litigation knew, or should have known, that the letter of Exhibit B was false, misleading and legally defective in at least the above-described respects, and knew, or should have known, that readers of the letter would reach false and

7

unjustified conclusions regarding Plaintiff and its patents from the statements made in the letter.

29. On information and belief, Defendant published the letter of Exhibit B for the specific purpose, and with the specific intent, of interfering with, and inducing licensees to breach, their licensing agreements with Plaintiff.

30. On information and belief, Defendant has made statements orally, substantially identical in effect to those set forth in the letter of Exhibit B, for the same specific purpose and with the same specific intent.

31. Defendant's interference with Plaintiff's existing license agreements was without legal or reasonable justification.

32. On information and belief, certain licensees have breached their agreements under Plaintiff's patents by failing and refusing to pay royalties due thereunder, based at least in part upon the statements made in the letter of Exhibit B and orally.

33. As a consequence of the foregoing, Plaintiff has suffered and will continue to suffer substantial and egregious harm.

## COUNT III

## INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONSHIPS

34. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1-33 above as if set forth fully herein.

35. On information and belief, Defendant has also caused the letter of Exhibit B to be published from the United States to certain entities who were at the time considering but had not yet executed, license agreements under one or more of Plaintiff's '904 patent and foreign patents corresponding to the '904 patent.

36. On information and belief, Defendant published the letter of Exhibit B for the specific purpose, and with the specific intent, of interfering with Plaintiff's relationships

and opportunities with, and inducing, unlicensed entities not to execute a license agreement under any of Plaintiff's patents corresponding to the '904 patent.

37. On information and belief, Defendant has made statements orally, substantially identical in effect to those made in the letter of Exhibit B, for the same specific purpose and with the same intent.

38. Defendant's interference with Plaintiff's prospective licensees was without legal or reasonable justification.

39. On information and belief, certain prospective licensees under Plaintiff's patents have refrained from executing a license agreement thereunder, based at least in part upon the statements made in the letter of Exhibit B and orally.

40. As a consequence of the foregoing, Plaintiff has suffered and will continue to suffer substantial and egregious harm.

## COUNT IV

## UNFAIR COMPETITION

41. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1-40 above as set forth fully herein.

42. On information and belief, Defendant published the letter of Exhibit B, and made substantially identical statements orally, as alleged above, for the specific purpose, and with the specific intent, of depriving Plaintiff of royalty revenue which Plaintiff is rightfully entitled to receive under the '904 patent and the foreign patents corresponding to the '904 patent, and unjustly to gain business for itself in the manufacture and sale of BGA trays, to the detriment of Plaintiff.

43. In doing so, Defendant has engaged in unfair and deceptive business practices and unfair competition.

44. As a consequence of the foregoing, Plaintiff has suffered and will continue to suffer substantial and egregious harm.

## COUNT V

## DEFAMATION

45. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1-44 above as if set forth fully herein.

46. The letter of Exhibit B is such that it imputes to Plaintiff the commission of a crime in "stealing" an unpublished invention or trade secret from another, and otherwise has the effect of holding Plaintiff up to scorn, hatred, ridicule and contempt, in the minds of the segment of the community with which Plaintiff regularly does business.

47. On information and belief, Defendant published the letter of Exhibit B, and made substantially identical statements orally, as alleged above, for the specific purpose, and with the specific intent, of defaming, libelling and slandering Plaintiff, its patents and related property rights and its business.

48. As a consequence of the foregoing, Plaintiff has suffered and will continue to suffer substantial and egregious harm.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiff prays as follows:

A. For judgment that one or more claims of the '904 patent has been infringed by Defendant;

B. For an injunction preliminarily and permanently restraining and enjoining further infringement by or on behalf of Defendant of any of the claims of the '904 patent;

C. For an accounting and an award of damages adequate to compensate Plaintiff for infringement of the '904 patent, but in no event less than a reasonable royalty for the use made of the invention, together with interest thereon;

D. For an increase in damages to three times the amount found or assessed as a result of willful infringement of the '904 patent by Defendant;

E. For judgment that Defendant has tortuously interfered with Plaintiff's existing license agreements and relationships with prospective licensees under the '904 patent and other of plaintiff's patents corresponding to the '904 patent, engaged in unfair competition and defamed, libelled and slandered Plaintiff, all to Plaintiff's substantial detriment;

F. For an injunction preliminarily and permanently restraining and enjoining further acts by or on behalf of Defendant of interference with Plaintiff's existing license agreements and relationships with prospective licensees under the '904 patent and other of Plaintiff's patents corresponding to the '904 patent, unfair competition and defamation, libel and slander against Plaintiff, its patents and its business;

G. For an accounting and an award of damages caused to Plaintiff as a consequence of Defendant's acts of interference, unfair competition and defamation, libel and slander;

H. For an assessment and award of interest, costs and attorneys' fees against Defendant; and

I. For such other and further relief as the Court may deem just and proper.

                Respectfully submitted,

                R.H. MURPHY & CO., INC.
                By Its Attorneys,

Dated: 7\17\00

                */s/ T.C. O'Konski*
                John H. Pearson, Jr., Esq.
                BBO #392680
                George A. Herbster, Esq.
                BBO # 231380
                Daniel J. Mansur, Esq.
                BBO #550603
                Pearson & Pearson
                The Gateway Center
                10 George Street
                Lowell, Massachusetts 01852
                (978) 452-1971

                Thomas C. O'Konski, Esq.
                BBO #378265
                Cesari and McKenna, LLP
                30 Rowes Wharf
                Boston, Massachusetts 02110
                (617) 951-2500

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true copy of the above document to be served on the date indicated below in the manner indicated below upon:

> John Lanza, Esq.
> Testa, Hurwitz & Thibeault, LLP
> High Street Tower
> 125 High Street
> Boston, MA 02110
>
> Gerald Levy, Esq.
> James E. Marina, Esq.
> Pitney, Hardin, Kipp & Szuch LLP
> 711 Third Avenue
> New York, NY 10017-4014

Served by Federal Express
on __7/17/00__                    _____